Good morning, Your Honors. My name is Scott Cody. Good morning. You may proceed. Thank you. I represent the appellants, Essie Peschong and her three minor children. May it please the Court, what I would like for Your Honors to see this morning is two things about this case. One, it is a weakening of the law of collateral estoppel. It stretches it far beyond its limits. Second, I hope you see this case as an opportunity to reaffirm the importance of the record in a prior case in a case of collateral estoppel where that is claimed. The basic law in Minnesota, and it's the law of the land, is that when you make an explicit finding on the issue that's to be estopped, you have to look at the record of that first case. And the language in the Minnesota law is you need to engage in a painstaking examination of the record of that first case because we need to know, is this an identical issue in the second case that's already been litigated, decided, that was necessary to that first case. There are no explicit findings on the record in this case that the Minnesota Juvenile Court decided anything about the accuracy or inaccuracy of the report that the defendant, Dr. Swenson, created. There are no findings on it. That puts us in the realm of painstaking examination of that juvenile court record. Are there any findings on the difference between the report and the doctor's testimony? No, Your Honor. There are, in the CHIPS order in the Juvenile Court, there's really only one mention of the report that Dr. Swenson created, and it is strictly as to its place in the chronology of the case. The Juvenile Court made no other findings about the report, did not compare it to anything else. And so, no, there were no findings that it was similar or dissimilar to anything that was proven at the trial, to anything that was testified to, to anything at all here. And when you don't have that, and you take that first step, again, you need to compare the records. And what you see in the defendant's brief here, and I should say the appellee's brief, is you do not need to engage in a side-by-side comparison. It is not necessary, they say, because we can tell that Ms. Pichon challenged the accuracy of the report in the CHIPS hearing. And this is what I mean when I say that we're weakening collateral estoppel, because challenging an issue is not what needs to happen. If you read the statement of the issues as the appellees presented it, they state the first issue as whether a subsequent lawsuit that seeks to re-litigate an issue in a preceding action is estopped. But that's not the law. It's not about whether you litigated, it's about whether you litigated and the issue was actually decided, and the issue was necessary to be decided. In their statement of the issues, the appellees then go on to say, in this case, after repeatedly contesting the issue in the CHIPS proceedings. Well, that's again the wrong word. It's not about whether a party contests an issue or challenges or attacks an issue, which are all different ways the appellees have framed the question here. The district court did this as well, talked about whether or not the issue of the report was an at issue in the juvenile court. That's not the test. The district court here talked about whether Ms. Pashong attacked the report in the juvenile case, but that's not the test. The test is, if you are going to say a finding is implicit in case number one, because here it's undisputed, there's no explicit finding about the report's truth or falsity. If you're going to say it's implied, you have to say where in the record it's implied. And I think this goes to your question, Your Honor. If you look at the CHIPS adjudication order in the Minnesota court, again, the only mention of this report is in the chronology. The juvenile court made some pretty detailed findings there in its order. If you compare that, if you have to actually compare the CHIPS order to the report, you can't assume this. And that's exactly the law here. Does the case depend on whether there's a fair inference that the testimony in the juvenile proceeding was based on the report? The district court's order. Some way tracked it or was more or less identical to it? That was the district court's finding, yes, that the juvenile court found Dr. Swenson's testimony to be credible. Yeah, more than that. I mean, it was quite plain that that was the basis for the decision. I think that was the most obvious way to read the order, Your Honor, that that was the central, I guess, linchpin to the granting. Well, you're saying there's not enough here to draw a sufficiently strong inference from those findings that they were in some measure or other the same. The testimony essentially mirrored the report. Is that it? I think that is the implication. And I think it's incorrect for two reasons. One is the testimony transcript was not on the record. The district court here did not see the testimony. It had to guess to say that this mirrors the report. But secondly and furthermore, even on the limited record that was presented by the defendants in this case, there are excerpts of Dr. Swenson's trial testimony. You'll find them in the Minnesota Court of Appeals filings, the appellant's brief there, a little bit in the Court of Appeals decision in that case. You'll see that they are not the same as what was in that report that she initially authored in June 2015. Were some of the records that I think you're referencing that would help answer the question is whether the report and the testimony were the same, were some of those under seal and unavailable? Can you help me understand what was available to one or both parties? I can try, Your Honor. I don't, I can't say for sure what exactly was or wasn't sealed in that case, but what, you know, I can point out are a couple of things. When Dr. Swenson is a party in this case, and this is her own testimony that we're talking about, I don't know if it's sealed by law. I don't have any reason to think it is. But even if it is, this is the person who gave the testimony. You know, this is somebody who should be able to say somewhere in their motion to dismiss, yeah, my testimony was the same, but that's where in the record here, it's again, it's an implied, there's a lot of dancing around, I think, the issue to say that it's the same thing. But when you don't have it, it's hard to say that. And I guess if our motion, or I should say if our appeal were to succeed and you were to reverse here, I don't think that forecloses the possibility that the defendants can move again, potentially for summary judgment if they have, you know, finally access to a copy of that transcript, and they can prove that it's the same thing. But as I said already, with what we do have, you can see some differences, and they are important differences between the testimony and the report. In a general sense, just what's the basis of each? The basis of Dr. Swenson's testimony was the large bulk of the child's medical records, which she did not have and had never seen when she wrote the report. So if the basis of her testimony is different six months later, you can't presume, you can't guess that it mirrors what's in that report. More specifically . . . You might have included it, though, that the fact that there was later information doesn't mean that that information was inconsistent with the report, with the facts in the report. I don't know that you can say that either way, but one big, important thing here is the large bulk that she described of the records she didn't have were the most recent years worth of records. These are the ones that Dr. Swenson did not have when she wrote that report. And when the CHIPS Court, the Minnesota Juvenile Court, found that this was a child in need of protection, it's relying on the more recent activities, the more recent medical treatments. It's not relying on stuff that happened five, ten years earlier. So there is definitely a difference in the basis of the testimony in the report. There are also specifics that we can see from this record that in the report, Dr. Swenson makes no mention of scoliosis as a misdiagnosis for the child. But the CHIPS order says scoliosis was a misdiagnosis, and it cites to Dr. Swenson's testimony. So it's not in the report. It is in the testimony. We know that. Another example goes the opposite way. In her report, Dr. Swenson wrote it was concerning that Essie Pichon was reporting seizures and that doctors never observed those. But in her testimony, which we have, she, Dr. Swenson, testified, that's not a big deal. That's not something that would concern me because doctors often don't observe seizures in a hospital. There are a lot of questions, essentially, about what does this testimony include? Does it actually support the idea that it's the same as the report? Because what we have on the record does not do that. And that's what I mean, Your Honors, when I say this case is important for a lot of reasons, obviously to our client, but I think it's also important in the sense of affirming that the record is important. You do have to look at it. And this isn't just Minnesota law. This is U.S. Supreme Court going back to the 1800s, this is the same issue. You have to look and you have to see it. Speculation is not allowed. And that's why we're asking the Court to reverse the decision of the District Court, and I hope you will, and I will save the rest of my time for rebuttal. Very well. Thank you. We'll hear from Counsel for the Appellees. Mr. Norrie, is it pronounced? Yes, Your Honor. Good morning. You may proceed. Good morning. Counsel, may it please the Court. At its core, this is a case about a boy who was repeatedly subject to medical child abuse. A child whose mother, according to the State District Court findings, sought treatment that was invasive and harmful, including a tracheotomy. A child who, again, according to the State Court, was kept in a wheelchair, even though he didn't need one. A child whose mother, in an effort to control him, reported myriad other unconfirmed diagnoses, including sleep psychosis, chronic fatigue, a cataract, a soft palate, and something called sensory integration issues. Now, the State Court denied a motion to dismiss, which was filed or predicated on the basis that Dr. Swenson's initial report was false. We know that. Now, following trial, the State Trial Court found that the child was the victim of medical child abuse. And the appellants here appealed that to the Minnesota Court of Appeals, and they lost. Now, in the United States District Court, the appellants want to prosecute claims that the initial report of child abuse was somehow false, not withstanding the trial court record that I just described to you. Candidly, we had a hard time finding any other case analyzing collateral estoppel, given such a robust and complex lower court record. But I think that this court can affirm Judge Doty's dismissal order for three pretty simple reasons. First, the appellants clearly challenged the false authenticity of Dr. Swenson's report in their pretrial motion to dismiss. And we know that because they raised that issue again to the Minnesota Court of Appeals. Let me point you to the very specific portion of their appellate brief. And it states, the report brimmed with hyperbolic and provably false statements. Elsewhere, it says about the report, Dr. Swenson either exaggerated her study of the child's medical records or knowingly misrepresented their contents. And again, somewhere else it states, the falsity of the allegations in the report would have been apparent. Are you highlighting the difference that counsel is making between what she argued and what the court actually resolved and decided? Absolutely. It's just where I'm headed, Your Honor. Thank you. So with those arguments, then the Court of Appeals took a look at this issue. And the court said, the allegations in the actual petition were based on this report. It characterizes them as based on the conclusion of an expert in the field of medical child abuse and her preliminary review. And of course, that's what she did. That's what Dr. Swenson did to generate the report. So the court said that the petition was based on the report. And then the court said that the allegations in the petition based on the report were substantiated through a three day trial. Motion to dismiss denied. The Court of Appeals says we will uphold that finding. So not only do we know that the family contested the issue of the falsity of the report in the lower court, but we know that the lower court rejected that argument. And that's reason number one why this court should affirm. Reason number two is that it is only now on appeal that the appellants have raised this new argument about the district court lacking an appropriate record. They say that the district court didn't have an adequate record. They didn't have this transcript. They didn't have something else. And they say that the district court failed to engage in what they characterize as the required painstaking review. But they failed to make those arguments to the lower court. Would it be helpful to have the HCCPS petition? I'm sorry, you want to say that again? Would it be helpful to have the HCCPS petition? Petition in the HCCPS? It may or may not, Your Honor, but if they thought that it were, that was something they should have raised to the lower court. And as we have observed in our brief and as we have pointed this court to in our brief, the Eighth Circuit is very clear that appellants cannot ignore an issue in the lower court and then choose to raise it on appeal. So they have waived their argument there. And frankly, they have failed to respond to that waiver issue in their brief whatsoever. And so it is simply not something that this court ought to spend time on analyzing because the appellants didn't see fit to analyze it before. And the third and final reason why this court should affirm has to do with the issue of equity. Now, I recognize that's something that counsel did not mention in his oral argument, but it is something that they raised in their brief, so I want to discuss it briefly. What is your objection? What do you say it is that the court failed to consider? Well, Your Honor, the appellants are arguing that the district court failed to analyze the issue of equity, right? And if the district court failed to do that, then that's a basis for reversal. That's in a nutshell what they're arguing. But the problem with that argument is that it is unsupported by law, right? There is no case law that they cite that says that it is reversible error for the trial court to not make an explicit finding that it analyzed the issue of equity. But we have... The issue that was raised, in fact, was that there was not a fair opportunity to litigate the issue. Isn't that right? Respectfully, no, Your Honor. There are four prongs of collateral estoppel, and that's not one of the prongs that the appellants argued. No, that was one of the... That was the claim that was made that rendered the application of the doctrine inequitable in the circumstances. Isn't that correct? That can be, Your Honor, yes. I'm sorry? That can be, Your Honor, but I don't believe that's exactly what the appellants were arguing here. Okay, I'll ask them. Very good. And as we have cited to this court with at least two cases, the Children of S.E.T. and the Barrington case, there are cases where courts do not explicitly analyze that issue, and nevertheless, orders based on collateral estoppel are upheld. And there's no reason for this court to do differently. But even if this court were to look more deeply into the issue of equity, right, we need to pay particular attention to what is at the heart of this case, right, which is Dr. Swenson's duty as a mandatory reporter, right? And it is the public policy of the state of Minnesota that we protect children by doing this. And so the equities favor protecting Dr. Swenson, who carried out her statutory and mandatory duties. And moreover, the appellants here took full advantage of a robust state court system. And in fact, at the- And part of that actually included additional testimony from the doctor, correct? So I guess where I'm struggling a little bit with is it does seem that the report, at least based on this record, there's been no finding that the report is the same as the testimony. And in fact, there's information that the testimony is expanded from the report. It's based on additional medical records. And so help me with that inference that it's been already concluded that the report, independent of the testimony, has been found to be accurate and credible. Certainly, Your Honor. And I don't think we need to get to the question of what was the testimony and is it a mirror image. If we look at the way that the Minnesota Court of Appeals analyzed this issue, they said the allegations in the petition were based on the report and that the allegations in the petition were substantiated at trial. So is that the end of the story? I mean, in your view, your brief could have just said that and we would be done. Absolutely. I think it's that simple. If there are no further questions, I'll take my seat. Very well. Thank you for your argument. Thank you. Just to respond to a few points here that were raised by counsel, Your Honors, talking about motions to dismiss that Ms. Bichon made in the Minnesota Chips case, I think is completely wrong, to be honest. When you're talking about early motions to reconsider that there's a you can't say that it's a necessary or even it's even a possible option for Ms. Bichon to contest the report at that point. It's deemed true. And I mean the petition by that. Secondly, if they're talking about Ms. Bichon's motion for sanctions in the juvenile court, which included a request for dismissal, again, the juvenile court itself had no mention of this report other than it was created and that Ms. Bichon had claimed it was false along with the petition and everything that's going on three months into this case at that point. The Court of Appeals in Minnesota talked about allegations being substantiated after a three-day trial with a dozen witnesses. Contrary to what you've just heard, it did not say in the Court of Appeals opinion that the report was substantiated. That's not what they said. They did not say that the petition was substantiated. They said that the allegation made by the department, CPS, the allegation of medical abuse, was substantiated. It's a very different thing than what counsel has just argued to you. Again, the point I think that has been made and it should be undisputed is that there is no finding as to whether this report was true or false at any point in the Minnesota juvenile proceedings. What appellees still decline to do is to actually engage in a comparison. Take the record you do have. There are many findings in the juvenile chips order, many findings. Compare them to what's in the report, which has dozens of independent allegations on its own. Appellees don't do that here. They didn't do it in the district court. We did it for them here. It's on the record. It's easy enough to see. You'll see there is less than a one-third overlap between allegations in the report and allegations that supported the finding that the child was a child in need of protection. If there's less than a one-third overlap between issues, can you really call that the identical issue? Can you really say it's the same in substance and that the difference has no effect on the outcome of the litigation here? Because it does have an effect on the outcome of this litigation. So you're saying there's things in the report that weren't relied on to say that the allegations were substantiated? Many, Your Honor. Many, Your Honor. What we tried to do in our brief, it's a hard record to encapsulate. He's correct. It is big. We tried to break it down into here are the allegations that were supporting the CHIPS order. Here are the allegations in the report that had nothing to do with the CHIPS order. Here are the ones that actually coincide. And you see that there is very little overlap between the two. So they are different things, Your Honors. Go ahead. Did you have a question? I was just going to try to theorize what would happen if we upheld your view. What would you present at the new proceeding? We would present the report itself, Your Honor. All of its individual allegations. There are many of them. Would it be a longer proceeding, or shorting, or condensed, or concise? Or would it be a long and long involved proceeding? In the district court. I'm sorry? Yeah. If we sent this back, what would happen? We sent this back. I assume the parties would engage in discovery at that point. But when we finally get to the point of a decision on the case, we would be looking at the allegations in the report and asking the question which needs to be asked. Are they true, or are they false? And defendants, appellees here, they're not really claiming that the report's allegations are true. They're just saying it's the same as the testimony, same as this. But it's not. And I'm out of time. And thank you very much. Judge, if I may, just a couple of quick questions. Yes. I'm wondering why the HCCPS petition is not in the record. That is a good question, Your Honor. I do not know. I believe we put in a footnote, and I might be mistaken, that it wouldn't have been sealed. But hold me to that right here. I guess our point is, again, that this is not the plaintiff's burden. And the district court here said, essentially, it's our burden to provide these things. It's not. It's the defendants, the movements. And they didn't meet it. That's another basic rule of law on collateral estoppel. And I hope that answers that question. All right. My other question is, can you tell me in brief compass what your difficulty is with the district court's failure to consider your equity argument? Yeah. Just briefly, I think basic idea is that collateral estoppel is an equitable doctrine. But what specific difficulty did you have with it? The fact that it, what makes it inequitable? Yes. That is a great question. And thank you for asking. Because collateral estoppel, you read the cases. You see how it's used. You see the fact patterns. It's been claimed, or at least insinuated, that Essie Pichon is a serial litigator, that she's taken six bites at the apple. I'm sorry. I thought your objection was that you hadn't had a fair opportunity to litigate the fact. And that does tie into it, Your Honor, because she was never a claimant. She's never made a claim. That's part of the collateral estoppel. In the district court You brought it into the collateral estoppel analysis as a natural matter, isn't it? It should be. It's also described in the Minnesota case law. It's already been done. And before you get to your equitable argument. What Ms. Pichon argued in the district court on a full and fair opportunity was that in a juvenile case, you do not have the same rights that you have in a civil case or even a criminal case. No discovery. No possibility for depositions. There's no motion for summary judgment, et cetera. Thank you very much. Thank you. Very well. We have all the cases submitted. We thank both sides for the argument. Thank you very much.